IN THE MATTER OF THE APPLICATION TO COMPEL PAYMENT BY THE EXECUTORS OF THE LAST WILL AND TESTAMENT OF ISAAC H. ARNETT, DECEASED, OF THE TAX IMPOSED BY CHAPTER 483 OF THE LAWS OF 1885.

*Collateral inheritance tax — chapter 483 of 1885 not repealed by chapter 713 of 1887 — right of the district attorney to appear for the people.*

Chapter 483 of the Laws of 1885, providing for the imposition of the collateral inheritance tax, was not repealed by chapter 713 of the Laws of 1887, and taxes which had accrued under the former act were collectible after the passage of the act of 1887; the purpose of the act of 1887 was to amend and not to repeal the former act.

In proceedings instituted for the settlement of the estate of a decedent, it will be assumed, where the district attorney of the county appears on behalf of the People of the State of New York, as a "creditor or person interested in the estate," because of its claim to receive the collateral inheritance tax therefrom, that the district attorney had authority so to appear, particularly in a case in which the attorney general of the State appears on the argument of the appeal taken from the decision of the surrogate upon such settlement of the estate, and expressly ratifies on behalf of the people the action of the district attorney both in the proceeding below and on the appeal. In such a case the people must be regarded as properly a party to the proceeding.

APPEAL taken by the district attorney of Niagara county, in the name of the People of the State of New York, from a decree of the Surrogate's Court of Niagara county of October 11, 1887, settling and allowing the final account of the executors of the last will and testament of Isaac H. Arnett, deceased.

*D. E. Brong,* district attorney, and *Charles F. Tabor,* attorney general, for the People, appellants.

*A. G. Potter,* for the executors, respondents.

DWIGHT, J.:

The executors, respondents, and one of the legatees under the will, appear specially and move to dismiss the appeal, on the ground that neither the district attorney nor the people has any standing to prosecute the same.

The testator died April 12, 1886. The proceeding before the surrogate was instituted by the petition of the executors, filed July 20, 1887, which alleged that all creditors had been paid, and set out

the names of all persons interested in the estate as legatees, heirs-at-law and next of kin, all of whom were collateral relatives. The usual citation was issued, returnable September 19, 1887, and duly served on the persons so mentioned, to attend the judicial settlement of the executors' account on a day named. The proceeding was adjourned from time to time, until the eleventh day of October, when the executors filed their final account, and the same was on that day judicially settled and allowed as filed.

The record contains a notice, dated September 27, 1887, signed by one George P. Ostrander (who describes himself therein as an appraiser duly appointed by the surrogate of Niagara county), directed to the legatees, to the effect that he will, on the 8th day of October 1887, proceed to make an appraisement of the legacies in the will of the deceased, subject to tax by virtue of the provision of chapter 483 of the Laws of 1885, and the amendments thereto. The notice is accompanied by proof of service thereof, by mail, on the several legatees named in the will, and the official oath of the appraiser. The notice, proof of service and oath were filed in the surrogate's office October 8, 1887. The record contains no order for the appointment of such appraiser, nor evidence that an appraisal was made or any proceeding had under the notice above mentioned.

The minutes of the proceeding of the settlement of the account of the executors contained the following entry:

" D. E. Brong, district attorney of Niagara county, appears in person for the people, the people being thereby made a party to this accounting, and asks for an order directing payment of inheritance tax on behalf of the people and objects to the account as presented. The petitioners object. Objection of district attorney overruled and his application denied, and exception. Account and vouchers filed and same settled and allowed as filed, and decree directed drawn accordingly." The decree, made on the day last mentioned, adjudged that the account be settled and allowed as filed; that the executors were not liable to pay any " collateral tax " upon any legacy or property under the will of the deceased; that no deduction should be made by them for any such tax, from any such legacy or property, but that all such legacies and property be delivered and distributed by them according to the provisions of the will, and, as decreed, without the payment of or deduction of any such tax."

From that decree this appeal was taken by the district attorney in the name of People of the State of New York.

We think the motion of the respondents to dismiss the appeal must be denied. Assuming, as we shall, for the purpose of the consideration of this motion, that the collateral inheritance tax act of 1885, (chap. 483), as amended by the act of 1887 (chap. 713), was applicable to the case, the people was a proper party to the proceeding, if not as a creditor, at least as interested in the estate. By section 1 of the acts, both original and amended, the taxes thereby imposed were payable to the treasurer of the county " for the use of the State ; " by section 4 such taxes became " due and payable at the death of the decedent," and, by section 6, they were to be deducted by the executors from the several legacies before the payment of the latter to the several legatees. The people had not been cited to the proceeding, but, by section 2731 of the Code of Civil Procedure, " a creditor or a person interested in the estate, although not cited, is entitled to appear upon the hearing and thus make himself a party to the special proceeding." We think it puts no strain upon these provisions to hold them applicable to the case of the people claiming payment of the collateral inheritance tax. That tax, although it is required to be assessed upon the particular legacies or estates given by the will, is yet, in a perfectly proper sense of the words, payable out of the estate of the testator. We cannot doubt that the people was a party interested in the estate, and, therefore, entitled to intervene, as a party to the proceeding, without having been cited thereto.

The authority of the district attorney to appear for the people, on the accounting by the executors, is not to be derived from the statute under consideration; that statute makes no reference to such proceeding. In the proceedings prescribed by the statute, the district attorney can move only as he is set in motion by written notice from the county treasurer. (Sec. 17.) But we know of no reason why the authority of an attorney to appear for the people should be any more subject to question than his authority to appear for any other party to an action or proceeding. The record does not clearly show that the authority of the attorney was questioned in the proceeding below; but, if it had been, it would seem that he was entitled to the presumption of authority which obtains in every case

of an appearance, in a court of record, by an attorney and counselor of this court. In this case, moreover, the attorney general appears on the argument here and expressly adopts and ratifies, on behalf of the people, the action of the district attorney, both in the proceeding below and on this appeal. We think that the people must be regarded as properly a party, and properly represented both before the surrogate and in this court.

The question presented, on the merits of the case, relates to the effect of the act of 1887 (Laws of 1887, chap. 713), amending the original act of 1885. [(Laws of 1885, chap. 483.) Of course, the motion of the district attorney, for an order for the payment of the tax, was properly denied. The tax had not been assessed; the property had not been appraised (§ 13); there had been no citation to the persons interested in the property liable to the tax to appear and show cause why said tax should not be paid. (Sec. 16.) Several things were wanting to give to the surrogate jurisdiction to order the payment of the tax. But the objection on the part of the people to the allowance of the executor's account as filed, which showed payment of the several legacies without deduction of the tax, was overruled, we must suppose, upon the ground of the effect of the act of 1887.

Upon that question it is the contention of the respondents that the act of 1885 was repealed by the act of 1887; that the taxes in question having accrued under the former act, the right of action therefor (not being saved by the repealing act), did not survive the repeal; and, consequently, that proceedings for the collection of such taxes cannot now be maintained.

We think this contention cannot be supported. The act of 1887 does not purport to repeal the former act, except so far as it is inconsistent with the provisions of the latter. In terms it amends the former act "so as to read as follows." The reading of the new act is, in great part, identical with that of the old; several of the amendments are merely verbal; several of them relate to mere details of procedure; the only changes of substance are in the provisions for the exaction of interest on taxes unpaid after a certain time, and for the exemption of certain classes of persons from the operation of the law. The latter amendment merely extends the exemption to the class of adopted children.

It seems clear from the whole frame and tenor of the new act, as well as from its introductory words, that it was the intention of the legislature to amend and not to repeal the former act; and, outside the act itself, there is nothing in the history or character of the new scheme of taxation to suggest a purpose to grant exemption from its operation in the limited number of cases in which the tax accrued under the original act and was uncollected at the time of the passage of the amendment.

We suppose there is nothing, either in the reason of the case or by way of authority, to prevent the application to this case of the rule of construction laid down by DENIO, J., in the case of *Ely* v. *Holton* (15 N. Y., 595). He said: " The theory of amendments made in the form adopted in the present instance, we take to be this ; the portions of the section which are repeated are to be considered as having been the law from the time they were first enacted, and the new portions are to be understood as enacted at the time, the amended act took effect." The form of amendment adopted in the instance then before the court was the same as in this case.

The two cases upon the authority of which the effect of repeal is claimed in this case are those of *Knox* v. *Baldwin* (80 N. Y., 610), and *Nash* v. *White's Bank of Buffalo* (105 id., 243). Both of those actions arose under penal statutes. The first presented a clear case of repeal. It was brought under the act of 1848, and its amendments, to enforce the personal liability, by way of penalty, of a trustee of a manufacturing corporation, by reason of the failure to file a report within twenty days after the 1st day of January, 1869. The company was organized in March, 1868. The action was commenced in 1876. Meantime (by chap. 510 of the Laws of 1875), section 12 of the act 1848 had been so amended as to require the filing of the first report only after the expiration of a year from the organization of the company, This amendment clearly repealed the provision of the act of 1848, which imposed a penalty for not filing a report within one year after the organization, and it was held that the action having been commenced after the repealing act took effect, the plaintiffs were without remedy under the law as it stood in 1869.

The case of *Nash* v. *White's Bank* was an action brought under the

act of 1870 (chap. 163), which prescribed a penalty for taking interest at a greater rate than seven per cent. The action had not been prosecuted to judgment at the time of the amendment of 1880 (chap. 567), by which the legal rate of interest was reduced to six per cent; the penalty was imposed for taking interest in excess of the new rate, and all acts and parts of acts inconsistent therewith were repealed. It was held that the effect of the act of 1880 was to repeal the penalty imposed by the act of 1870. The reasons for the decision are not stated. We may suppose that it was based upon the ground that the penal provisions of the two statutes were inconsistent with each other; that the new statute imposed a penalty for an act which was free from the condemnation of the former statute; that penalties are not favored in the law; that statutes imposing penalties must receive strict interpretation; that, in the language of Dwarris, " the general words of a penal statute shall be restrained for the benefit of him against whom the penalty is inflicted." (Potter's Dwarris on Statutes, 245.) But whatever the grounds of that decision, we do not feel called upon to extend its application beyond the class of penal statutes, and, consequently, do not regard it as controlling in this case.

For the reasons stated, we think the law of 1885 was not so far abrogated by the amendment of 1887 as to relieve estates from liability for taxes which accrued under the former act, and were not collected before the passage of the latter; and this conclusion renders necessary a reversal of the decree appealed from.

The proceeding should be remitted to the surrogate, with directions to continue the same until proceedings are had for the assessment and collection of the taxes in question, unless such taxes are sooner paid.

All concur.

Decree reversed; proceedings remitted to the Surrogate's Court of Niagara county, to proceed thereon in accordance with the opinion herein, without costs of this appeal to either party.